ERNESTO QUIÑONES SAMBOLÍN, Plaintiff and Appellant, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 587.    Decided October 21, 1964.

*Luis E. García Benítez* and *S. L. Lagarde Garcés* for appellant. *J. B. Fernández Badillo, Solicitor General, Genoveva R. de Carrera, Assistant Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Santana Becerra, and Mr. Justice Ramírez Bages.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The question in this case is being litigated for the first time. The case was submitted to the trial court by virtue of stipulated facts which may be summarized as follows: For the

calendar year 1954 the Secretary of the Treasury determined that the taxpayer-appellant's taxable income was $27,362.25. The tax on this amount of taxable income is $9,360.49. For the following year, 1955, a net taxable income of $30,921.10 was attributed to the taxpayer, resulting in a tax of $10,195.25. It may be observed that the tax determined for 1955 was greater than that determined for 1954.

For 1956 the Secretary of the Treasury admitted that the taxpayer suffered a net loss of $28,933.27. This loss was carried back to the prior year, 1955, with the result that for 1955 there remained a net taxable income of only $1,987.83. This is the difference between the 1955 net income of $30,921.10, as determined by the Secretary, less the amount of the loss. After applying the $2,000 personal credit, no tax was required to be paid in 1955. However, the taxpayer had paid, based on income declared in his return, a tax amounting to $5,544.25 for the year 1955, which was credited by the Secretary in the final computations carried out in this case.

As a result of the taxpayer's net income as determined by the Secretary for the year 1954, the taxpayer would have been compelled to pay a tax amounting to $9,360.49, which sum, with interest, penalties and surcharges, amounted to $12,821.52. Against this amount the Secretary credited $6,278.86 for taxes and interest paid for the year 1955 with a difference in litigation of $6,542.66. The trial court sustained the tax.

Let us now analyze the law behind these facts. The advance payment of tax or pay-as-you-go system, followed a few years before by the federal tax legislation, was brought into Puerto Rico by the 1954 Income Tax Act. Income taxes were traditionally paid in the year following the year in which they accrued, and never on current income. The pay-as-you-go system is provided for in §§ 58, 59 and 60 of

the Act. See, also, the pay-as-you-go system in § 141 *et seq.* regarding withholding of tax at the source.

Section 58 provides for the filing of estimated tax returns for the current year in the cases, on the date, and subject to the other provisions contained in that section. Usually, but with certain exceptions, estimated tax returns are filed on or before April 15 of the taxable year. Section 59 provides for the payment of estimated taxes in four equal installments usually starting April 15 of the taxable year. Section 60 provides some special rules for the application of §§ 58 and 59, among them, 60(a), relating to provisions particularly applicable to farmers. The taxpayer in this case is a farmer. Among these special rules is § 60(d) which provides that §§ 58, 59 and subsection (a) of § 60 applicable to farmers, and § 294(d) (referring to additions to tax), shall be applicable only to those individuals covered by § 58(a) who elected, within the first three and a half months of the taxable year 1955, as prescribed by the Secretary, to make these sections applicable to them with respect to the taxable year 1955 and succeeding taxable years. This election, once exercised, was irrevocable. The parties stipulated that the taxpayer elected, in due time and manner, to be covered by these provisions.

Section 60A is entitled "Relief for Individuals Subject to Sections 58 and 59," and provides:

"(a) *Taxpayers Included.*—This section shall be applicable only to individuals who make the election offered by section 60(d) in the form, and subject to the conditions therein provided.\*

"(b) *Relief.*—Every individual included in subsection (a) of this section is relieved from the payment of the tax corresponding to the taxable year 1954, but only in an amount not in excess of the amount of the tax payable by such individual for the taxable year 1955.

---

\* As it appears in Act No. 7 of October 6, 1954, amending § 60A.

".     .     .     .     .     .     .     .

"(d) *Extension for Payment*.—To every individual covered by subsection (a) of this section whose tax for the taxable year 1954 exceeds his tax for the taxable year 1955, a period of 18 months is granted beginning from the date of the termination of his taxable year 1954, for the payment of such excess without interest, penalties, or any additions to such amount."

In connection with the pay-as-you-go system through the withholding of salaries there is also a similar provision of relief under § 141A. In the same manner, every individual who, from January 1, 1955, was subject to withholding at the source of his income is relieved from the payment of the tax attributable to income derived from wages for the year 1954, but only in an amount not in excess of the amount of tax payable by such individual for the taxable year 1955. An eighteen month period was granted for the payment of the excess without penalties or interest.[1]

As was pointed out at the beginning, the pay-as-you-go system of taxation through estimated returns and through withholding at the source was an innovation in the 1954 Act, altering drastically the traditional way of paying and collecting taxes. Those who had the opportunity of feeling the legislative pulse while the above-mentioned law was being considered are aware of the serious preoccupation of the Legislature regarding the economic effect these measures were to have on the taxpayer. This preoccupation existed because taxpayers would be compelled to pay at the same time, the 1954 tax and the pay-as-you-go tax for the year 1955. This resulted in certain opposition and reluctance to adopt the pay-as-you-go system especially in the case of withholding at the source. On the other hand, the pay-as-you-go system was desirable not only because it advanced

---

[1] The above-mentioned sections of the 1954 Income Tax Act—Act No. 91 of June 29, 1954—appear in 13 L.P.R.A. §§ 3058, 3059, 3060, 3060A, 3141, 3141A, and 3294 (1962 ed.).

the collection of taxes but because the economy and the production of income was growing; *i.e.*, in 1954 the economy was stronger than in 1953, in 1955 stronger than in 1954. Therefore, the change in the year as base of income would increase the collection of taxes even though the rates were not altered. Without sacrificing the pay-as-you-go system, but with the proper regard for its immediate effect on the taxpayer, a solution to the problem was found through the above-mentioned provisions of relief.[2]

■ Sections 60A and 141A provided for remittance of 1954 taxes to the taxpayer covered by §§ 58 through 60 and 141. It was an act of remittance. See §§ 60A-1 and 141A-1 of the Regulations for the 1954 Act. However, it should be observed that because of the above reasons and because the same economic philosophy is involved in the provisions of relief, the Legislature required remittance of the 1954 tax only in an amount equal to or not in excess of the 1955 tax, the taxpayer being obliged to pay the excess. However, some relief was also granted for the excess in the above-mentioned eighteen-month period without interest.

The problem herein involved arises due to a very peculiar situation, and it is possible that what is decided here shall have no other use than to dispose of this controversy be-

---

[2] In 1943, when Congress adopted Act No. 68 providing for the pay-as-you-go system, it gave relief to the taxpayer through other mechanisms. 57 Stat. 126, 145.

In general, see the statement of the Secretary of the Treasury, Mr. Sol Luis Descartes, before the House Finance Committee regarding Bill 935 (Act No. 91 of 1954), commencing June 29, 1953. Mr. Descartes announced, referring to payment of income taxes through withholding of wages, that in placing a group of persons on the pay-as-you-go system legislation to be introduced would be prepared remitting all or part of the taxes for one year. Tr. of Hearing 104.

See, also, the statement before said Committee on July 8, 1953, of Mr. Beardsley Ruml, author of the federal pay-as-you-go system, Tr. of Hearing 252.

See Additional Report of the Senate Finance Committee on H.B. 935, 4-4 Journal of Proceedings 2150.

tween the parties, since after 1956 it is impossible for a situation like this to exist. The taxpayer neither paid the 1954 tax as declared by him nor as determined by the Secretary. He paid the 1955 tax as declared. The 1955 tax, as determined by the Secretary, was also greater than the one determined for 1954. Based on these facts, the tax determined by the Secretary for 1954, even though greater than the one declared, would be fully remitted according to the law. The problem arises because the taxpayer suffered a loss in 1956, which, according to § 122, 13 L.P.R.A. § 3122 (1960 ed.), was carried back to 1955. This loss absorbed all taxable income for 1955, with the result that no tax was left to be paid for that year. This, then, caused the 1954 tax to exceed the tax for 1955, which was eliminated. As a consequence, no part of the 1954 tax could be remitted to the taxpayer.

■ If these facts are considered in the light of the motives of § 60A, it is obvious that the taxpayer was not subject to, nor did he have to face, the double economic impact which the Legislature tried to avoid. He did not pay the 1954 tax during 1955, and the 1955 tax which was paid in advance was returned. The taxpayer contends that, in making him pay the 1954 tax, he is penalized through receiving the benefit of the carryback loss, to which he is entitled under the law. There is no such punishment or penalty. The taxpayer's situation is the result of an event not created by the Secretary, *i.e.*, the net loss in 1956, which loss, to his benefit, absorbed all the taxpayer's 1955 income. He also contends that in electing the pay-as-you-go system, he irrevocably obliged himself to this type of payment, which was more profitable to the Treasury, every year thereafter and not only for 1955, and that subsequent events should not alter the situation under which he obligated himself. Even so, and whatever the circumstances may be, this Court shall not authorize the 1954 remittance other than under the

express terms under which the remittance was authorized. To decide that the 1954 tax was also remitted in excess of the 1955 tax, or that it was remitted without considering whether or not a tax for 1955 existed, would be in opposition not only to the letter of the law but also to its purpose.

■ In the record, the complaint is treated as a deficiency case. Technically, this is not a deficiency case for the year 1954 in the amount determined by the Secretary, since even though this amount was lower than the 1955 tax. This is a case of an adjustment of the taxpayer's position as a result of a subsequent event analyzed in light of the tax balance created between 1954 and 1955 by virtue of the aforementioned §§ 58–60. Therefore, no penalty shall be imposed on the taxpayer as a consequence of a tax situation resulting from events subsequent to his filing of a return. The taxpayer's obligation to pay the 1954 tax is not due to negligence or intentional ignorance of the law but to the existence of a subsequent event for which he is not responsible.

The judgment rendered by the Superior Court, San Juan Part, sustaining the tax for the year 1954, as modified, is affirmed.

